IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
AT SOUTH BEND

**MICHAEL BACOTTI**  CASE NO:
38 ALEXANDER ROAD
LONDENDERRY, NH 03053

  PLAINTIFF

  -VS-

FOREST RIVER, INC.
55470 COUNTY RD. 1
ELKHART, IN 46514

            COMPLAINT AND JURY DEMAND
  AND         (BREACH OF WARRANTY)

FORD MOTOR COMPANY
C/O CT CORPORATION SYSTEM, S/A
334 N. SENATE AVE
INDIANAPOLIS, IN 46204

  DEFENDANTS

---

**PRELIMINARY STATEMENT**

1. This case involves claims asserted under the New Hampshire and/or Massachusetts and/or Indiana Uniform Commercial Code and the Magnuson Moss Warranty Act.

2. Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 U.S.C. 2301 et seq, invoking 28 U.S.C. 1331, and/or the amount in controversy is more than $75,000 and is

Page 1

between citizens of different states, invoking 28 U.S.C. 1332. Plaintiff is a citizen of New Hampshire, defendant Forest River, Inc. is a citizen of Indiana, and defendant Ford Motor Company is a citizen of Michigan.

3. The recreational vehicle which is the subject of this dispute was acquired by Plaintiff in New Hampshire and was defective when acquired; ineffective warranty repair attempts were made upon the subject vehicle by Defendants' agents and/or authorized warranty repair facilities and representatives in New Hampshire; the place where the relationship of the parties arose is New Hampshire because the warranty obligations of Defendants were both made with Plaintiff at the time of and with the purchase of the subject RV in New Hampshire and Defendants directly interacted with Plaintiff in New Hampshire.

## IDENTIFICATION OF PARTIES

4. Plaintiff Michael Bacotti is a natural persons domiciled, residing in and citizens of New Hampshire and is a consumer and buyer within the meaning of applicable laws.

5. Defendant Forest River, Inc. (hereafter "Forest River") is a "second stage" manufacturer of recreational vehicles and a corporation authorized to do business and/or doing business in Indiana and New Hampshire. Forest River's principal place of business is in Indiana where it is headquartered. Forest River is the second stage manufacturer and warrantor of a recreational vehicle that Plaintiff acquired, and a supplier and a merchant.

6. Forest River is engaged in the manufacturer, sale, distribution, and/or warranting of recreational vehicles in part or in whole and related equipment and

services directly but primarily through or by way of its agents and authorized sales and service providers, including Campers Inn, Inc.

7. Forest River is also engaged in the business of marketing, supplying and/or providing warranties to consumers who purchase its products through its authorized sales and service providers, including Campers Inn, Inc., which Forest River pays to perform warranty repairs under Forest River's various warranties, both express and/or implied.

8. Defendant Ford Motor Company (hereafter "Ford") is a "first stage" manufacturer of recreational vehicle chassis and a corporation authorized to do business and/or doing business in Indiana and New Hampshire. Ford's principal place of business is in Michigan where it is headquartered. Ford is a first stage manufacturer and warrantor of a recreational vehicle chassis that Plaintiff acquired as part of the subject RV, and a supplier and a merchant.

9. Ford is engaged in the manufacturer, sale, distribution, and/or warranting of recreational vehicle chassis in part or in whole and related equipment and services through or by way of its agents and authorized sales and service providers, including Rodman Truck Center Ford dba Rodman Ford.

10. Ford is also engaged in the business of marketing, supplying and/or providing warranties to consumers who purchase its products through its authorized sales and service providers, including Rodman Ford, which Ford pays to perform warranty repairs for Ford under Ford's various warranties, both express and/or implied.

11. In the manufacture of the subject RV, Forest River bought a chassis from Ford

upon which it constructed its second stage, finished motorized recreational vehicle.

### FIRST CLAIM: BREACH OF WARRANTY AND/OR CONTRACT

12. This case involves a defective 2021 Forest River FR3 30 DS recreational vehicle that Forest River warranted and contracted to warrant in whole or in part and which chassis Ford warranted and contracted to warrant in whole or in part, but which neither of them was able to repair within a reasonable number of chances or a reasonable amount of time and whose respective warranties and/or contracts each Defendant breached.

13. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

14. This claim is for breach of warranties and/or contract of warranties by each Defendant jointly and/or severally in New Hampshire and/or Massachusetts and/or Indiana.

15. As a result of the above, and the allegations below, inter alia, each Defendant breached its respective warranties and/or contracts of warranty, to the injury of Plaintiff.

16. Upon information and belief, Plaintiff state that at all times relevant, Campers Inn, Inc. was a supplier and merchant and an authorized representative and agent of each Defendant. Campers Inn, Inc. was authorized by each Defendant to act for it in all respects related to warranty repair work performed or attempted on the subject RV. Plaintiff acquired the subject RV from Campers Inn, Inc.

17. Upon information and belief, at all times relevant Campers Inn, Inc. has a chassis

repair facility and an RV repair facility and was expressly and/or impliedly authorized by Forest River to act for it as its agent and authorized warranty repair representative in making repair and service attempts to Forest River products under Forest River's warranties and/or contracts of warranties.

18. Alternatively and upon information and belief, in any of the instances where Campers Inn, Inc. may not have been or was not authorized in advance of performing a Forest River warranty-covered repair or service on the chassis of the subject RV, Campers Inn, Inc. was nevertheless subsequently paid by Forest River for the warranty-covered repair or service, and Forest River thereby ratified those repairs and/or services which Campers Inn, Inc. performed or attempted under the Forest River warranties. After it was first contacted by Campers Inn, Inc. about Forest River's warranty-covered repair and service work on the chassis involved in this case, Forest River either knew or should have known that thereafter Plaintiff would seek to have the Forest River warranty repair and service work done at Campers Inn, Inc. and that, in fact, such work was occurring but Forest River did nothing to stop Campers Inn, Inc. from continuing to represent to Plaintiff that it was an agent for Forest River and/or a Forest River representative and/or a Forest River authorized warranty repair facility performing the Forest River warranty repair or service work on the subject RV on behalf of Forest River. As a result, Forest River is estopped from denying that Campers Inn, Inc. was its agent in relation to the Forest River warranty work which Campers Inn, Inc. attempted or performed on the subject RV.

19. Upon information and belief, Plaintiff state that at all times relevant, Rodman

Ford was a supplier and merchant and an authorized representative and agent of each Defendant. Rodman Ford was authorized by each Defendant to act for it in all respects related to warranty repair work performed or attempted on the subject RV.

20. Upon information and belief, at all times relevant Rodman Ford has a chassis repair facility and an RV repair facility and was expressly and/or impliedly authorized by Ford to act for it as its agent and authorized warranty repair representative in making repair and service attempts to Ford products under Ford's warranties and/or contracts of warranties.

21. Alternatively and upon information and belief, in any of the instances where Rodman Ford may not have been or was not authorized in advance of performing a Ford warranty-covered repair or service on the chassis of the subject RV, Rodman Ford was nevertheless subsequently paid by Ford for the warranty-covered repair or service, and Ford thereby ratified those repairs and/or services which Rodman Ford performed or attempted under the Ford warranties. After it was first contacted by Rodman Ford about Ford's warranty-covered repair and service work on the chassis involved in this case, Ford either knew or should have known that thereafter Plaintiff would seek to have the Ford warranty repair and service work done at Rodman Ford and that, in fact, such work was occurring but Ford did nothing to stop Rodman Ford from continuing to represent to Plaintiff that it was an agent for Ford and/or a Ford representative and/or a Ford authorized warranty repair facility performing the Ford warranty repair or service work on the subject RV on behalf of Ford. As a result, Ford is estopped from

      denying that Rodman Ford was its agent in relation to the Ford warranty work which Rodman Ford attempted or performed on the subject RV.

22. On or about November 28, 2020, the parties entered into a consumer transaction, in that Plaintiff agreed to acquire from Forest River's authorized retail seller and agent, Campers Inn, Inc., and Campers Inn, Inc. agreed to sell to Plaintiff under the terms of Campers Inn, Inc.'s representations and Defendants' representations and a Retail Installment Contract between Campers Inn, Inc. and Plaintiff, a certain RV. The subject sale was to the benefit of Forest River and Ford and also Forest River's authorized retail seller and agent, Campers Inn, Inc. Each Defendant knew or should have known prior to the sale of the subject RV that the sale of the subject goods would be to their individual and/or joint benefit and would involve a consumer, and in consideration thereof each Defendant contracted and/or agreed to warrant the RV in part or in whole to be free from defects and/or that it would repair and/or replace any defect which it contracted and/or warranted against, the goods being a certain 2021 Forest River FR3 30 DS recreational vehicle and its chassis believed to bear VIN # 1F65F5DN8L0A02187, and whose total cost was about $109,495 plus all applicable taxes and fees.

23. As part of the transaction, Forest River's authorized retail seller and agent did not display, disclose or provide to Plaintiff any of the potential limitation clauses of any warranty from either Defendant.

24. Forest River's authorized retail seller did not display, disclose or provide to Plaintiff a copy of any printed warranty from either Defendant prior to when the Forest River's authorized retail seller sold and delivered the subject RV to

Plaintiff.

25. Forest River's printed warranty is not a stand-alone document but is included as part of the owner manual for the subject RV and a package of numerous manuals and literature. The terms of Forest River's printed warranty are non-negotiable and, upon information and belief, Plaintiff did not sign any document indicating that they had read or agreed to or understood Forest River's written warranty limitation clauses or Forest River's disclaimer clauses regarding incidental and consequential damages. Forest River's authorized retail seller and agent did not make Plaintiff aware that Forest River's printed warranty contained any such disclaimer clauses before selling Plaintiff the RV.

26. Ford's printed warranty was not a stand-alone document but was included as part of a package of numerous manuals and literature for the RV. The terms of Ford's printed warranty are non-negotiable and, upon information and belief, Plaintiff did not sign any document indicating that they had read or agreed to or understood Ford's printed warranty or its limitation clauses or its disclaimer clauses regarding incidental and consequential damages and Forest River's authorized retail seller and agent did not make Plaintiff aware that Ford's printed warranty contained any such a disclaimer clauses before selling Plaintiff the RV.

27. Upon information and belief, Plaintiff state that the limitation clause of incidental and consequential damages was not contained on the first page of the Ford warranty and was not specifically mentioned in the Ford warranty table of contents and the Ford printed warranty was non-negotiable.

28. Plaintiff did not sign any document indicating that they were aware of or

understood or agreed to Ford's disclaimer of incidental and consequential damages or any other limitation clause in the printed Ford warranty.

29. Plaintiff acquired the RV in reliance on the existence of warranties and/or contract of warranties, which they only understood to have RV coverage, from each Defendant and on advertising representations and/or express and/or implied warranties from each Defendant.

30. At the time of their purchase, Plaintiff reasonably believed that the finished recreational vehicle and its chassis did not contain defects. The defects which did exist could not reasonably have been discovered prior to acceptance of the finished RV by Plaintiff. With regard to any defects in the goods which Plaintiff did know about prior to Forest River's authorized retail seller selling and delivering the RV to Plaintiff, Forest River's authorized retail seller represented to Plaintiff would be repaired and Plaintiff relied upon said representation.

31. The purpose of each Defendant's warranty was (a) to get their warranted portion of the subject RV fixed within a reasonable amount of time and within a reasonable number of attempts if a defect arose and was in or caused by their warranted portion of the subject RV, and (b) to give Plaintiff confidence in the reliability and quality of the subject RV, and (c) to give Plaintiff confidence in each Defendant's representations about the subject RV and the recreational vehicles and/or chassis which each Defendant designed and built and warranted, and (d) to give Plaintiff confidence in each Defendant itself as a responsible company that lived up to its representations, its word, and its warranties.

32. After acquiring the RV and its chassis, Plaintiff discovered that neither conformed

to the respective warranties and/or representations of each Defendant inasmuch as the respective portions of each Defendant developed continuing malfunctions, defects and problems.

33. The defects in the RV and its chassis, which were themselves substantial and existed in the materials and workmanship caused by each defendant, included but are not limited to: Oven door dented; Entry door inoperable; Driver side blind loose; Right side mirror loose; Mirror heat light inoperable; House electrical problems; Dashboard loses power while driving; Short circuit in center console affecting climate control; Hill assist error message displays; Parking brake wiring recall; Front slide out malfunction; Rear slide out malfunction; Water leaks and damage; Decals Peeling on Right Side; Driver Side Switch Loose; among other things.

34. Each Defendant was notified of its respective defects and non-conformities in the RV and the failed repair attempts by its agents and/or authorized warranty repair facilities prior to filing this case.

35. In all respects, Plaintiff substantially, if not completely, performed his obligations under each Defendant's warranty and each Defendant did not perform its respective obligations, as set forth herein above and below.

36. Because of the contract-covered and/or warranty-covered defects, Plaintiff notified each Defendant and/or one of its agents and/or authorized warranty repair and servicing representatives of the numerous defects and on various dates delivered the RV into the possession of a representative and/or agent for each Defendant and/or each Defendant itself beginning shortly after the sale.

37. On or about January 4, 2021, Plaintiff took the RV to Campers Inn, Inc. for repair of the following warranty defects: Oven door dented; Entry door inoperable; Driver side blind loose; Right side mirror loose; Mirror heat light inoperable; House electrical problems; Dashboard loses power while driving; Short circuit in center console affecting climate control; Hill assist error message displays; and Parking brake wiring recall.

38. While in for warranty repairs, Campers Inn, Inc. informed Plaintiff that the RV would need to be transported to a Ford dealership to have the chassis defects repaired. Campers Inn, Inc. transported the RV to Rodman Ford on or about January 21, 2021. Rodman Ford attempted to repair the following defects: Dashboard loses power while driving; Short circuit in center console affecting climate control; Hill assist error message displays; and Parking brake wiring recall.

39. On or about March 1, 2021, Campers Inn, Inc. picked up the RV from Rodman Ford, transported it back to Campers Inn, Inc.'s service center to continue performing the warranty repairs on the RV's remaining "house" or "box" defects.

40. On or about March 8, 2021, Plaintiff picked up the RV from Campers Inn, Inc. However, after picking up the RV, Plaintiff continued to experience defects with RV, including but not limited to: the decals on the right side were peeling off, the dashboard was still losing power, the were still house electrical problems, the slide was malfunctioning, among other things.

41. On or about May 14, 2021, Plaintiff took the RV back to Campers Inn, Inc. The RV was out of service for approximately 12 days, until May 25, 2021, for repair of

the following warranty defects: Entry door inoperable; Mirror heat light inoperable; Front slide out malfunction; Rear slide out malfunction; House electrical problems; Dashboard loses power while driving; Hill assist error message displays.

42. During the May 2021 repair attempt, Campers Inn, Inc. informed Plaintiff that it could not duplicate the Dashboard loses power while driving defect. In an attempt to repair the slide out defects, the dealership reset the slide outs.

43. Despite the repair attempt, Plaintiff continued to experience slide out malfunctions. He even attempted to contact Lippert, who advised that the problem was likely larger electrical issue causing the slide out malfunctions. Plaintiff also continued to experience defects, including but not limited to: Dashboard loses power while driving, Water leaks, and House electrical problems. Additionally, Plaintiff had noticed that condensation around the toilet. However, in June 2021, Plaintiff discovered that the flooring was warping from water damage.

44. On or about July 28, 2021, Plaintiff took the RV back to Campers Inn, Inc. for repair of the following defects: Water leaks; Mirror heat light inoperable; Front slide out malfunction; Rear slide out malfunction; House electrical problems; Dashboard loses power while driving; Hill assist error message displays.

45. After inspecting the RV, Campers Inn, Inc. informed Plaintiff that it believed it had located the source of the water leak, duplicated the Dashboard loss of power defect, but could not determine the cause of the slide out malfunctions and house electrical problems.

46. On or about September 30, 2021, Campers Inn, Inc. transported the RV to Rodman Ford for repair of the chassis warranty-covered defect.

47. During that time, Rodman Ford represented to Plaintiff that it had watched Plaintiff's videos of the Dashboard loses power while driving defect, understood the issue, but could not identify or repair the Dashboard loses power while driving defect. Rodman Ford recommended that Plaintiff continue to use the RV in the hopes that the Dashboard loses power while driving defect would happen again to help diagnose the cause of the defect.

48. Upon information and belief, on or about December 22, 2021, Campers Inn, Inc. picked up the RV from Rodman Ford, transported it back to Campers Inn, Inc.'s service center to continue performing the warranty repairs on the RV's remaining "house" or "box" defects.

49. On or about January 15, 2022, Campers Inn, Inc. informed Plaintiff that it had winterized the RV and performed and oil change on the generator and engine. Campers Inn, Inc. informed Plaintiff that the RV was ready to be picked up. However, unlike in the past, Campers Inn, Inc. did not represent to Plaintiff that it had repaired the RV's electrical or other reported defects. Then, later that day, Campers Inn, Inc. informed Plaintiff that Campers Inn, Inc. had noted damage on the RV that needed to be repaired prior to pick up.

50. As of the filing of this complaint, the RV has been out of service by reason of warranty repairs for more than 250 days and continues to be out of service as this Complaint is being filed for defects the Defendants are each responsible for. To make matters worse, the RV's defects are still not fixed.

51. Prior to filing this case, Plaintiff had numerous communications with Campers Inn, Inc. and one or more Defendants and/or their respective agents and/or representatives and/or authorized warranty repair facilities and representatives and/or other entities for help with the RV.

52. In all respects, Plaintiffs substantially if not completely performed their obligations under the Rv's warranty from defendant and defendant did not perform its obligations, as set forth herein above and below.

53. After being subject to repairs and repair attempts by each Defendant's agents and authorized warranty repair facilities and representatives about multiple times and being out of service for the majority of the time that Plaintiff has owned the RV and accumulating several substantial defects that affects its use, value and safety since its acquisition, Plaintiff notified each Defendant that they wanted their money back but neither Defendant would do that.

54. In spite of each Defendant's obligations, when Plaintiff complained of the inability of each Defendant and/or their agents and authorized warranty repair facilities and representatives to repair the RV, each Defendant did not repair or replace or repurchase the subject RV.

55. Instead of performing as represented, each Defendant did not repair all the defects it was responsible for in the vehicle and/or its chassis once and for all time. In short, the defects were not repaired, Plaintiff lost all confidence in the reliability and quality of the RV and/or its chassis, and Plaintiff lost all confidence in Forest River and Ford as a company.

56. As a result, each Defendant breached its express and/or implied warranties

and/or contracts of warranty.

57. As a result, each Defendant's warranties and/or contracts of warranties failed of its essential purpose and any limitations contained within the warranties and/or contracts of warranty are null and void and Plaintiff is entitled to all applicable legal and equitable remedies in law.

58. In addition, since the limitation and disclaimer clauses of the Defendant's respective printed warranties were not part of the basis of the bargain when the seller sold and delivered the subject RV to Plaintiff, any limitations and/or disclaimers contained within each Defendant's respective printed warranties and/or contracts of warranty are null and void and without consideration and Plaintiff are entitled to all applicable legal and equitable remedies in law.

59. Through its advertising and otherwise, each Defendant represented that the recreational vehicles and/or chassis and/or the components and/or parts thereof which they each respectively built were fit for the purpose for which they were designed, that they are safe and suitable for their intended use, reliably operable for transportation and use, and Plaintiff acquired the subject RV and its chassis in reliance upon the belief that each Defendant possessed a high degree of manufacturing skill and judgment and would honor its warranties and contracts of warranties.

60. Through its advertising and otherwise, each Defendant represented that the recreational vehicles and/or chassis and/or components and/or parts thereof which they each built were of merchantable quality, fit and in proper condition for the ordinary purpose and use for which they were designed and used, and

        Plaintiff relied on such, but the vehicle and/or chassis and/or the components and/or parts involved in this case were not, however, of merchantable quality.

61. The malfunctions and defects in the vehicle and/or its chassis severely and substantially impaired its use and/or safety and/or value to Plaintiff.

62. Each Defendant's failure to timely fix once and for the defects for which it was responsible caused Plaintiff to lose confidence in the reliability of the subject RV and/or its chassis and in the ability of each Defendant to repair the defects for which it was responsible.

63. Plaintiff provided each Defendant and/or one or more of its authorized agents and/or authorized warranty repair facilities and representatives with a reasonable number of opportunities and a reasonable amount of time to repair the RV and/or its chassis but they have each neglected, failed, refused or otherwise been unable to do so.

64. As a result of the above facts, each Defendant breached its respective warranties and/or contract of warranties and/or representations with respect to the RV and/or its chassis.

65. One or more of the defects and malfunctions in the RV were covered under the terms of one or more of each Defendant's warranties and/or contracts of warranty, and each said Defendant failed to repair the RV and/or its chassis, thereby diminishing the use and/or safety and/or value of the RV and/or its chassis.

66. Each Defendant and/or one or more of its agents and/or authorized warranty repair facilities and representatives had notices of the breaches of the warranties

and/or contracts of warranty and the defective condition of the subject RV and/or its chassis within a reasonable time.

67. Plaintiff suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failure of each Defendant's authorized agents and/or representatives to repair or replace the vehicle or refund its price, including interest on the purchase price, insurance, licensing and registration costs, and more.

### SECOND CLAIM: MAGNUSON MOSS WARRANTY ACT

68. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

69. Plaintiff is a consumer. Each Defendant is a warrantor and extended express and implied warranties and contracts of warranties to Plaintiff covering all or portions of the subject finished RV. Each Defendant also caused to be placed inside the RV in a mixed up packet of other printed materials, literature, and manuals where they knew or should have known the Plaintiff would not likely discover them until after the RV had already been sold and delivered to Plaintiff, the Forest River and Ford printed warranties, which are each also a "written" warranty under the Magnuson Moss Warranty Act, 15 U.S.C. 2301, et seq. The subject RV and its chassis are each goods as defined in the Magnuson Moss Warranty Act.

70. This claim is for each Defendant's breach of express and/or implied warranties and/or contract of warranties and/or each Defendant's violation of its obligations under the Magnuson Moss Warranty Act including but not limited to its obligations to comply with its respective warranties and/or contract of warranties

and/or to make its warranty term disclosures and its actions in full compliance with all provisions of the Magnuson Moss Warranty Act and its applicable regulations.

71. As a result of the above, among other things, each Defendant has breached its obligations under the Magnuson Moss Warranty Act and/or the Warranty Act's applicable disclosure and/or other regulations.

72. As a result of the above, among other things, each Defendant breached its respective obligations to make its warranty term disclosures and its actions in full compliance with all provisions of the Magnuson Moss Warranty Act and the applicable Code of Federal Regulations.

73. As a result of the above, inter alia, each Defendant is in violation of the Maguson Moss Warranty Act and Plaintiff were directly and proximately damaged thereby.

**WHEREFORE**, judgment is demanded against each Defendant as deemed proper and lawful by the Court, cumulatively and/or alternatively as follows:

### PRAYER FOR RELIEF

1. On the first claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial;

2. On the second claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

Plus on each claim as may be applicable for each and every violation which may

be proven at trial, all damages, remedies and relief deemed necessary and just, expenses of suit and litigation, interest from the date of acquiring the RV, reasonable attorney fees, plus all costs and costs of litigation. Plaintiff demands trial by jury on all claims and issues.

                                              Respectfully submitted,

/s/ Scarlett M. Steuart
SCARLETT M. STEUART
www.RvLemonLaw.com        Attorney for Plaintiff
8250 Washington Village Drive
Dayton, Ohio 45458-1850
Telephone:   937.432.9500
Facsimile:    937.432.9503
Email:        Scarlett@BurdgeLaw.com

Z:\data\Bacotti, Michael\Core Pleadings\Complaint FR Ford 011822 ss.wpd